[Civ. No. 619.   Fourth Appellate District.—January 26, 1932.]

ELISABETH SIEGEL et al., Respondents, v. WILFRED L. FARRAR, Appellant.

Wm. J. M. Heinz for Appellant.

Wm. P. Webb for Respondents.

BARNARD, P. J.—This is an action to quiet title. Briefly stated, the facts are as follows: The plaintiffs are sisters and are the daughters of Anna Siegel. On April 26, 1922, the plaintiffs acquired title by grant deed to a house and lot in the city of Anaheim. On November 28, 1928, an action was instituted by Wilfred L. Farrar, doing business as Farrar's Collection Service, against Anna Siegel, and in connection therewith, the interest of Anna Siegel in this real property was attached. Concerning this interest, the record shows

that Anna Siegel testified that in 1924 her married daughter was very ill; that she told her she did not own anything and if she should die her husband could put her out of the house; and that the daughter replied: "We will make a contract." She also testified, "I didn't own the property. My daughters owned the property and they gave me the right to live there and we had it as a contract." This is the only evidence in the record as to what interest Anna Siegel possessed in the property in question, or as to how it was acquired. However, both counsel state in their briefs that it has been subsequently decreed by a court that Anna Siegel had a life estate in the property. While there is no evidence of this in the record, it seems not to be disputed by either side and the case was apparently tried upon the theory that such was the fact. On February 1, 1929, a judgment was entered in the action against Anna Siegel for $471.14, with costs. On April 10, 1929, the sheriff of Orange County, under a writ of execution issued in that case, sold all of the right, title and interest of Anna Siegel in the real property here in question, to Wilfred L. Farrar for the sum of $125. On July 1, 1929, Anna Siegel quitclaimed to the plaintiffs all of her right, title and interest in and to this property. On July 1, 1929, these plaintiffs paid, with money earned by one of them through giving music lessons, the sum of $125 with interest to date of payment, to the sheriff of Orange County, for the purpose of redeeming said property. The sheriff delivered to the plaintiffs a certificate of redemption of real estate dated July 1, 1929, in which it is recited that the money has been paid to him in full payment of the purchase price paid by the purchaser at the execution sale in question. This certificate was recorded on July 5, 1929. Subsequent to this redemption, Wilfred L. Farrar procured another writ of execution and levied upon the interest of Anna Siegel in this property under the deficiency judgment remaining after the original execution sale. On August 21, 1929, this action was begun to quiet the plaintiffs' title and to set aside the second levy under the writ of execution and any sale that might be made thereunder. On August 22, 1929, the sheriff again sold said interest of Anna Siegel under execution levied under the deficiency judgment, to Wilfred L. Farrar for the sum of $400. After a trial, judgment was entered in favor of the

plaintiffs, quieting their title to the property, from which judgment·this appeal is taken.

The main point relied upon by appellant is that the respondents were not entitled to redeem the property or the interest in the property by paying off the amount paid by the purchaser at the execution sale, and that in contemplation of law, no redemption was actually made. Their entire contention is based upon the fact that there was testimony that the respondents paid nothing to their mother for the quitclaim deed referred to. It is argued that the transaction must then be presumed to be fraudulent and set aside. It appears, without contradiction, that the money used to redeem the property from the sale in question was furnished by one of the respondents from her own earnings. Under the evidence, no possible claim could be made that the mother had fraudulently furnished the money for this purpose. No way appears in which the appellant could possibly argue that he has been injured in any manner through this transaction. While he may be interested in any money owned by the judgment debtor, no such money was used in this redemption. The respondents were the owners in fee of the property in question, subject only to the life estate. It was certainly not fraudulent but on the other hand perfectly natural and proper that they should desire to acquire the remaining interest represented by the life estate which had been sold under execution sale. They bought this in a market that was open to them and paid the full price which the law provides shall be paid in such a case, which is the amount the purchaser at the execution sale had himself paid. This purchaser, the appellant, had himself fixed that price as a reasonable and proper value of the property, and he is in no position to now maintain that it was not its full value. The entire interest of Anna Siegel, whatever it was, had been sold at the execution sale, and she did not later acquire any other interest which could be again sold. The law provides that the right of redemption may be transferred. (Sec. 701, Code Civ. Proc.; *Simpson* v. *Castle*, 52 Cal. 644.) The appellant is in no position to maintain that this was a fraudulent transfer in so far as he is concerned. He himself had fixed the price at which it could be redeemed, and his debtor's money was not used in the redemption. The court found that there was no fraud, that the property

had been redeemed from the prior execution sale, and as a conclusion of law, found that the respondents were the owners in fee and entitled to the possession of the property in question. These findings are fully sustained by the evidence.

■ Some question is raised that it is inequitable to permit this redemption by the respondents to stand, since nothing was paid to their mother for the quitclaim deed, and that the respondents may not prevail since they do not come into court with clean hands. It would appear that the appellant is not in the best position to raise such a question, since the facts shown by the record would indicate that he attempted to and did purchase the interest of Anna Siegel in this property at the execution sale for very much less than it was worth. The respondents are in no way to blame, if it should develop that he is unable to collect the deficiency judgment which he preferred to a situation in which a redemption would have paid him in full.

Other points are raised which require no discussion here. They have all been examined and considered, and in our opinion are not of sufficient merit to require discussion.

The judgment is affirmed.

Jennings, J., and Lambert, J., *pro tem.*, concurred.